UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:14CV-00080-HBB

AMANDA F. STANLEY                                                    PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                     DEFENDANT

## <u>MEMORANDUM OPINION</u>
## <u>AND ORDER</u>

### <u>BACKGROUND</u>

Before the Court is the complaint (DN 1) of Amanda F. Stanley ("Stanley") seeking

judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both

Stanley (DN 12) and the Commissioner (DN 16) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered

November 10, 2014 (DN 11), the parties were notified that oral arguments would not be held

unless a written request therefor was filed and granted.   No such request was filed.

<u>FINDINGS OF FACT</u>

Stanley filed an application for Supplemental Security Income payments on April 15, 2010 (Tr. 201).   Stanley alleges that she became disabled on February 14, 2010 as a result of brain injury, anxiety, depression, memory loss issues, and knee problems (Tr. 201, 222, 232). Administrative Law Judge Anne C. Pritchett ("ALJ") attempted to conduct Stanley's hearing on September 20, 2012, but postponed the hearing because Stanley's attorney submitted 300-400 pages of new evidence only one day prior (Tr. 76-79).   On January 29, 2013, the ALJ conducted a full hearing in Evansville, Indiana (Tr. 15, 28-30).   Stanley and her attorney, Austin P. Vowels, attended the hearing (Tr. 28).   Matthew Sprong, an impartial vocational expert, also testified by telephone (Tr. 28).

In a decision dated March 19, 2013, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-22).   At the first step, the ALJ found Stanley has not engaged in substantial gainful activity since April 15, 2010, the application date (Tr. 17).   At the second step, the ALJ determined that Stanley's history of substance abuse in reported remission, s/p remote traumatic brain injury followed by a stroke and borderline intellectual functioning are "severe" impairments within the meaning of the regulations (Tr. 17).   Additionally the ALJ found that Stanley's collarbone fracture was a non-severe impairment (Tr. 17). At the third step, the ALJ concluded that Stanley does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 17).

At the fourth step, the ALJ found Stanley has the residual functional capacity to perform light work with limitations (Tr. 18).   More specifically, the ALJ found that Stanley would be:

> limited to unskilled work without stringent speed or production requirements in an environment that is stable with minimal competing stimuli such as flashing lights, loud noises, and other distractions, and only occasional interaction with co-workers, supervisors, and the general public.

(Tr. 18).   Relying on testimony from the vocational expert, the ALJ found that Stanley has no past relevant work (Tr. 21).

The ALJ proceeded to the fifth step where he considered Stanley's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 21).   The ALJ found that Stanley is capable of performing a significant number of jobs that exist in the national economy (Tr. 21).   Therefore, the ALJ concluded that Stanley has not been under a "disability," as defined in the Social Security Act, from April 15, 2010 through March 19, 2013, the date of the decision (Tr. 22).

Stanley failed to file a timely request for the Appeals Council to review the ALJ's decision (Tr. 7).   The Appeals Council denied Stanley's request for review of the ALJ's decision (Tr. 1-3).

## CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

3

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1)  Is the claimant engaged in substantial gainful activity?

2)  Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)  Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)  Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)  Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Stanley's claim at the fifth step.

As previously mentioned, the Appeals Council denied Stanley's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

4

## A.  Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

## B.  Listings 12.02 and 12.09

Stanley argues that the ALJ erred at the third step of the sequential evaluation process by failing to find that her mental impairments meet the criteria for Listings 12.02 and 12.09 (DN 12-1, Plaintiff's Fact & Law Summary at p. 7).   In response, the Commissioner claims the ALJ reasonably found Stanley's condition did not meet or medically equal any listed impairment (DN 16, Commissioner's Fact & Law Summary at p. 3).

A claimant must meet *all* of the specified medical criteria of a listing in order to show that her impairment matches the listing.   Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis added).   "It is insufficient that a claimant comes close to meeting

5

the requirements of a listed impairment."   Elam ex rel Golay v. Comm'r of Soc. Sec., 348 F.3d

124, 125 (citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)).

Listing 12.02 is the listing for Organic Mental Disorders, defined as "[p]sychological or

behavioral abnormalities associated with a dysfunction in the brain.   20 C.F.R. Pt. 404, Subpt. P,

App. 1, § 12.02.   Under Listing 12.02, "a claimant must first demonstrate psychological or

behavioral abnormalities, and must then demonstrate the required level of severity."   Taylor v.

Barnhart, 189 F. App'x 557, 563 (7th Cir. 2006).   To meet or equal the severity requirements of

Listing 12.02, a claimant's impairments must satisfy the "A" and "B" criteria *or* the "C" criteria.

Id.   Specifically, to satisfy § 12.02, the claimant must meet the following:

> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> 1. Disorientation to time and place; or
>
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
>
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
>
> 4. Change in personality; or
>
> 5. Disturbance in mood; or
>
> 6. Emotional liability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
>
> 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuro-psychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;
>
> AND

6

B.   Resulting in at least two of the following:

1.   Marked restriction of activities of daily living; or

2.   Marked difficulties in maintaining social functioning; or

3.   Marked difficulties in maintaining concentration, persistence, or pace; or

4.   Repeated episodes of decompensation, each of extended duration;

OR

C.   Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psycho-social support, and one of the following:

1.   Repeated episodes of decompensation, each of extended duration; or

2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Id.

The ALJ determined that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.09"[1]

---

[1] The first heading in Stanley's Fact & Law Summary states "The [sic] Stanley's Mental Impairments Meet the Criteria of Listings 12.02 and 12.09."   Stanley goes on to offer in depth support for her claim that she meets Listing 12.02.   However, Stanley makes no further reference to Listing 12.09 and does not offer any factual or legal support for this contention.   Listing 12.09, Substance Addiction Disorders, requires a claimant to meet the severity requirements of another listing, one of which is Listing 12.02.   In Stanley's case, satisfying the severity requirements of Listing 12.02, therefore, is a prerequisite to satisfying Listing 12.09.   As the undersigned will demonstrate, Stanley cannot meet the severity requirements in Listing 12.02, and thus, the undersigned will not further address Listing

(Tr. 17). The ALJ did not discuss the "A" criteria, but instead found that Stanley could not satisfy the "B" criteria (Id.). The ALJ found that Stanley had only mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation (Tr. 17-18). Stanley argues that the evidence shows she meets all four potential "B" criteria requirements (DN 12-1, Plaintiff's Fact & Law Summary at pp. 9-12).

As to restrictions of daily living, the ALJ determined Stanley's restrictions were mild because she dresses herself, keeps her hygiene intact, uses a microwave, and shops (Tr. 17). Pursuant to the regulations, activities of daily living include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. A, § 12.00(C)(1).

Stanley points out that she cannot drive, she has been deemed incapable of caring for her children, she has never maintained a residence, and she had numerous hygienic problems while she was incarcerated (Id. at p.9). Unfortunately, evidence from the record contradicts Stanley's arguments. For instance, Stanley claims that she cannot drive, but testified explicitly during the hearing: "I can drive" and "I have my license" (Tr. 63-64). Stanley also claims she has never lived by herself, but told Dr. Robert Adams during a psychological evaluation that she was living alone in a hotel room (Tr. 298). Although there is some evidence supporting Stanley's claims of hygienic issues during her incarceration (Tr. 653), there is evidence subsequent to her incarceration of improved hygiene including that she bathed daily in her hotel room (Tr. 298).

---

12.09.

The record amply supports the ALJ's conclusion that Stanley suffers only mild restriction in her daily activities.  She indicated to Dr. Adams that she listens to music, microwaves food, keeps her room clean, uses the telephone, and reads the newspaper (Tr. 298).  Additionally, Stanley indicated in her application materials that she can fix sandwiches, clean dishes, and do laundry (Tr. 244).  Perhaps most notably, after reviewing the record, State agency medical consultant, Dr. Jan Jacobson, found that Stanley's daily restrictions were mild (Tr. 314).  Thus, the ALJ's determination that her daily living restrictions are mild is supported by substantial evidence in the record.

Moving to "difficulties in social functioning," the ALJ found that Stanley suffers from mild difficulties because although she lost custody of her two children and avoids large groups, she does have some male friends and sees her family members (Tr. 18).  Social functioning refers to a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(2).  This includes the ability to get alone with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers.  Id.  Stanley now argues that the ALJ ignored medical records revealing "absolute social anxiety" and "impulse control issues, mood swings, and anger outbursts" (DN 12-1, Plaintiff's Fact & Law Summary at p. 10).

After reviewing the record thoroughly, the undersigned finds that much of the evidence regarding Stanley's difficulties in social functioning is inconsistent.  On the one hand, Stanley does produce evidence from Dr. Evans, a therapist at River Valley Behavior Health, that she suffers from anxiety disorder, discord with her family, and a poor choice of friends (Tr. 447-48). Stanley also told Dr. Adams that "when she gets upset she gets angry . . . [s]ometimes she yells . . . [w]hen that happens she tries to get away from others and stay by herself for a while" (Tr. 298).

9

On the other hand, Stanley told Dr. Adams that she often visits with other hotel guests, exchanges correspondence with friends, visits with her grandmother 4 to 5 times a week, and occasionally visits with her sister and niece (Id.).   Further, Stanley's application materials indicated she liked to play dominoes, cards, and watch television with others about two or three times a week (Tr. 247).   Also noteworthy, is the fact that Stanley's friend, Curtis Boyd, testified at her hearing that they are "real good friends" that keep in touch by telephone and see each other from time to time (Tr. 65).   Stanley attempts to bolster her social limitations argument by discussing a falling out between her and Boyd, however, the two have since reconciled because Stanley is no longer asking for his assistance with criminal activity (Tr. 58-59).   Regardless of the fact that Stanley does produce some evidence of difficulties in social functioning, the ALJ's determination that her social restrictions are mild is supported by substantial evidence in the record.

The ALJ also determined that with regard to concentration, persistence, or pace, Stanley has moderate difficulties because she functions in the borderline range of intellectual functioning (Tr. 18).   The regulations delineate that concentration, persistence, or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).

Stanley argues that the ALJ improperly ignored and discredited the River Valley Physician's assessment, which indicated that she was moderately and markedly limited in many activities related to sustained concentration and persistence (DN 12-1, Plaintiff's Fact & Law Summary at p. 11).   Stanley believes it to be "very notable" that the physician marked "distractible" in the "Attention/Concentration" box in the assessment (Id.). Overall, Stanley

believes that "essentially all of the evidence in the file shows that she is markedly limited in concentration" (DN 12-1, Plaintiff's Fact & Law Summary at p.11).

The record, however, tells a different story. For instance, Dr. Adams found that even though Stanley reported problems with her memory, this was not apparent in her current psychological testing (Tr. 296). Dr. Adams further found that Stanley was able to understand, retain, and follow simple instructions (Tr. 300). Additionally, State agency psychologist, Jan Jacobson, did not find any areas in the "sustained concentration and persistence" category that were markedly limited (Tr. 318-19). As for Stanley's specific arguments regarding Sarah Phillip's evaluation, the ALJ did not ignore her assessment, but instead properly determined that it should be given little weight because it was a one-time examination (Tr. 21). Finally, Phillips' checkmark next to the word "distractible" in the "Attention/Concentration" category does not deserve the emphasis that Stanley is arguing. Stanley fails to acknowledge that Phillips refrained from checking other options, such as "confused," "listless," or "needed redirection." (Tr. 847). After evaluating the record thoroughly, the undersigned concludes that the ALJ's finding that Stanley is only moderately impaired with regard to concentration, persistence, and pace is supported by substantial evidence in the record.

As to episodes of decompensation, the ALJ found that Stanley has experienced no episodes of decompensation, which have been of extended duration (Tr. 18). Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). Additionally, these episodes must be of "extended duration," meaning three episodes within one year, each lasting for at least two weeks. Id.

Stanley disagrees with the ALJ's finding, arguing that she has had many episodes of decompensation (DN 12-1, Plaintiff's Fact & Law Summary at p. 12). She claims that she goes through periods where she is angry and feels like she wants to hurt someone, which ultimately causes her to break down and commit crimes (Id.). Specifically, she cites to her stints of incarceration, her hospitalization for attempted suicide, her injuries while incarcerated that were believed to be self-inflicted, and her threatening violence toward her bunkmate, as repetitive and obvious episodes of decompensation (Id.). It appears that the Commissioner interprets Stanley's claim to be arguing that her convictions and periods of incarceration qualify as repeated episodes of decompensation (DN 16, Commissioner's Fact & Law Summary at pp.10-11).

The undersigned will address the claim from both Stanley's point of view and the Commissioner's point of view. First, Stanley's argument is flawed, in that the combination of instances that she listed cannot meet the durational requirements for episodes of decompensation. Her hospitalization occurred in September of 2006 (Tr. 335), and she was incarcerated for armed robbery at some point in 2006 (Tr. 37). However, the alleged self-inflicted injuries and threats of violence to her bunkmate while she was incarcerated did not occur until 2008 (Tr. 569, 573, 579). Thus, she cannot establish that three of the incidents she has listed satisfy the requirement of three episodes occurring within one year. Additionally, she makes no effort to prove these instances each lasted for at least two weeks.

Similarly, after looking at the Commissioner's interpretation of Stanley's claim, the undersigned is not convinced that Stanley's periods of incarceration can qualify as "episodes of decompensation" since her theft and fraud charges do not correlate with her mental and physical impairments. Stanley also fails to cite any legal authority for this proposition. Even if the undersigned did find that Stanley's periods of incarceration constituted episodes of

decompensation, Stanley still cannot prove that these were episodes of extended duration.   At her administrative hearing, Stanley testified that she was incarcerated from roughly September 2011 to March of 2012 for committing credit card fraud (Tr. 45).   She also admitted that she was incarcerated for 21 days for shoplifting from K-Mart, but does not identify when this incident occurred (Tr. 45-46).   These two periods of imprisonment cannot meet the "extended duration requirement" because the regulations require that she prove three episodes occurred within one year.   Consequently, the ALJ's finding that Stanley suffered no episodes of decompensation of extended duration is supported by substantial evidence in the record and the correct legal standards were applied.

The ALJ also found that the evidence failed to establish the presence of the "paragraph C" criteria (Tr. 18).   Stanley now argues that she does meet the requirements of paragraph C because (1) her conditions stem from a car accident that occurred in 2001; (2) she has experienced episodes of decompensation caused by minimal increases in demands and change in environment; and (3) she has never lived outside of a highly supportive living arrangement (DN 12-1, Plaintiff's Fact & Law Summary at p. 12-13).

The undersigned's prior analysis of the B criteria dismantles Stanley's arguments. As previously mentioned, Stanley cannot prove episodes of decompensation of extended duration. Further, the record indicates that Stanley has lived on her own in hotel rooms where she is able to care for her basic needs, and she testified to improvement in her behavior over the past six months (Tr. 59-60, 298).   Finally, although Stanley refers to her 2001 car accident, she does not point to any evidence from the record supporting a medically documented history of chronic mental disorder.   The ALJ's finding that the evidence did not establish the presence of "C" criteria is, therefore, supported by substantial evidence in the record and comports with applicable law.

13

### C. Residual Functional Capacity

Stanley makes a number of challenges to Finding No. 4, the ALJ's residual functional capacity ("RFC") determination. The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The RFC finding is based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the RFC finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

### 1. Claimant's Credibility

In evaluating Stanley's residual functional capacity ("RFC"), the ALJ found that Stanley's alleged limitations appear to be preferences rather than anything she physically or mentally cannot do (Tr. 20). The ALJ additionally decided to not make findings based on Stanley's assertions that were unsupported by medical evidence because of her three convictions for crimes involving dishonesty (Tr. 21). Now, Stanley argues that her testimony was corroborated by the medical evidence in the record and, thus, should be considered probative despite her crimes relating to dishonesty (DN 12-1, Plaintiff's Fact & Law Summary at pp. 13-14). She opposes the ALJ's characterization of her employment while she was incarcerated (Id. at 14). In response, the Commissioner argues that the ALJ reasonably took both Stanley's crimes of dishonesty and evidence of her employment while incarcerated into account in evaluating her credibility (DN 16, Commissioner's Fact & Law Summary at p. 15).

14

In evaluating a claimant's RFC, the ALJ may properly consider the credibility of the claimant. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing the witness's demeanor and credibility." Id. (citing Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987)). Nevertheless, the undersigned's decision to discredit or partially discredit a claimant's credibility must be supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003).

An ALJ can properly take into account a claimant's past convictions involving crimes of dishonesty as a factor in discounting a claimant's credibility. See Dozier v. Astrue, No. 1:11-CV-782, 2012 WL 2344163, at *8 (N.D. Ohio, Mar. 15, 2012); Douglas v. Comm'r of Soc. Sec., 486 F. App'x 72, 75 (6th Cir. 2012) (unpublished decision). The undersigned here finds nothing improper in the ALJ's consideration of Stanley's past convictions involving crimes of dishonesty.

Here, the ALJ's credibility determination also rested on other grounds, including Stanley's physical examinations and results from evaluations of her mental problems (Tr. 20-21). The ALJ appropriately made the observation that it seems to be Stanley's preference not to work, because she testified at the hearing that she quit her only job outside of prison because she "she didn't like the . . . handicapped people" being around her (Tr. 46). As for her employment as a dishwasher while she was incarcerated, the ALJ noted: "[s]he said she had a job in prison four hours a day washing dishes that she lost when another prisoner was harassing her. She said she got her job back. She said she was unable to lift the garbage by herself" (Tr. 19). The ALJ also notes that her RFC determination is based on specific details from claimant's testimony such as her ability to

15

work in the kitchen four hours a day in prison (Tr. 21).   Dr. Adams' report bolsters the ALJ's conclusion because Stanley told Dr. Adams that she worked in the kitchen, "doing dishes intermittently for about 4 or 5 hours almost every day" (Tr. 298).   Additionally, Stanley did not testify at her hearing to a total number of hours she worked each day, but did state that she worked as a dishwasher for an hour for lunch and two hours for dinner while in jail (Tr. 44).   Therefore, the ALJ's residual functional capacity determination as it related to Stanley's credibility is supported by substantial evidence.

### 2. Weight Assigned to Sarah Phillips' Opinion

As mentioned previously, the ALJ determined that Sarah Phillips' opinion should be given little weight because she only saw Stanley on one occasion.   Stanley disagrees with the ALJ's decision because she believes that Sarah Phillips, from River Valley Treatment, is a treating physician, and thus, the ALJ improperly discounted her opinion (DN 12-1, Plaintiff's Fact & Law Summary at p. 13).   Additionally, Stanley claims that she continued seeing Sarah Phillips after the last medical records were submitted to the ALJ, and that the more recent records have simply not been submitted (Id.).   In opposition, the Commissioner claims that Sarah Phillips was not a treating physician because she only examined the plaintiff once, and she is a therapist that does not qualify as an acceptable medical source under the regulations (DN 16, Commissioner's Fact & Law Summary at pp. 8-9, 14).

The Commissioner is correct that an LPCA is not an acceptable medical source within the definition set forth by the regulations.   Stigall v. Astrue, No. 6:10-27-DCR, 2011 WL 65886, at *5 (E.D. Ky. Jan. 10, 2011).   The regulations define "acceptable medical source" at 20 C.F.R. § 404.1513(a) by listing the categories of medical sources that qualify.   This list does not include licensed counselors.   Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011); Stigall, 2011 WL 65886

16

at *5 (citations omitted).   Instead, a licensed counselor falls into the category of "other sources" which are not entitled to the same controlling weight or deference to which the opinions of acceptable medical sources are normally entitled.   *See* <u>Smith v. Comm'r of Soc. Sec.</u>, 482 F.3d 873, 876 (6th Cir. 2007).   Nonetheless, An ALJ may still use evidence from "other sources" to show the severity of a claimant's impairments and how it affects their ability to work.   20 C.F.R. § 404.1513(d).

Accordingly, since Sarah Phillips is an LPCA, she is considered an "other source" and her opinion is not entitled to controlling weight and deference.   Because Stanley never produced the alleged additional treatment records from visits with Sarah Phillips, the undersigned cannot consider the existence of additional records in reviewing the ALJ's determination.   *See* <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996).   Consequently, the ALJ's decision to accord Sarah Phillips' opinion little weight is supported by substantial evidence in the record and comports with applicable law.

### 3. Capacity to Perform Light Work

Stanley claims that she cannot perform light work because she experiences pain even while stretching; she has problems with weakness and balance; and she tried doing work as a housekeeper for a hotel but lost her job after being hospitalized (DN 12-1, Plaintiff's Fact & Law Summary at p. 15).   The Commissioner counters that the ALJ supported his assessment of Stanley's work-related functional limitations and capabilities with substantial evidence (DN 16, Commissioner's Fact & Law Summary at p. 13).

As an initial matter, Stanley's claim regarding evidence of her hospitalization while working as a housekeeper is misguided.   This evidence was submitted after the ALJ's decision but prior to the Appeals Council's decision.   "[W]here the Appeals Council considers new

17

evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." Cline, 96 F.3d at 148 (citing Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir. 1993)).   Further, Stanley has not sought a "sentence six" remand to place this new evidence before the ALJ. *See* 42 U.S.C. § 405(g).   Thus, the undersigned will not consider this evidence when reviewing the ALJ's decision.

Here, the ALJ was thorough in making her RFC determination and reviewed Stanley's testimony, Curtis Ray Boyd's testimony, consultative examinations by Dr. Adams and Dr. Allison, vision examination by Dr. Stearns, and records from River Valley Behavioral Health.   Thus, the ALJ's decision is supported by substantial evidence in the record and comports with applicable law.

### D. Significant Jobs in the National Economy

Lastly, Stanley challenges the ALJ's Findings Nos. 9 and 10, claiming that the vocational expert was clear that Stanley would be found disabled if her testimony was found to be reliable (DN 12-1, Plaintiff's Fact & Law Summary at p. 15).   She claims that she attempted to work as a housekeeper, like the vocational expert suggested, however, it was a failure due to her medical conditions (Id.).   The Commissioner responds that the ALJ did not need to include unsubstantiated complaints into her hypothetical questions to the vocational expert, and that the ALJ reasonably discredited Plaintiff's testimony (DN 16, Commissioner's Fact & Law Summary at p. 17).

In making a determination at the fifth step of the sequential evaluation process, the Administrative Law Judge must consider a claimant's age, education, past relevant work experience, and residual functional capacity.   20 C.F.R. §§ 404.1520(f), 416.920(f).   The

18

vocational expert's testimony can constitute substantial evidence that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economics, Bradford v. Sec'y, Dep't of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments.   Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).   There is no requirement that the ALJ's hypothetical question to the vocational expert reflect unsubstantiated complaints by the claimant. See Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curium).

At the hearing, the vocational expert testified that if the ALJ found Stanley's testimony credible and the impairments described by her were supported by medical evidence, she would not be able to perform any full time, competitive employment on a sustained basis (Tr. 74).   As the undersigned addressed earlier, the ALJ found that some of Stanley's complaints were unsubstantiated and only partially credible.   Further, based on the testimony of the vocational expert, the ALJ also found that Stanley is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 22).   Since the undersigned has already found that the ALJ's determinations regarding Stanley's credibility are supported by substantial evidence in the record (Tr. 21), further analysis of this claim is not necessary.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:          Counsel

20